IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CV-119-F

| | |
|---|---|
| BRIAN ANTHONY JUDGE ) | |
| ) | |
| Petitioner, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| REBECCA LYNN WILLIAMS ) | |
| ) | |
| Respondent. ) | |

Petitioner Brian Anthony Judge initiated this action by filing a Verified Petition Under Hague Convention Seeking Return of Child to Petitioner, Immediate Issuance of Show Cause Order to Respondent, and Expedited Hearing on the Merits [DE-1] ("Hague Petition") seeking the return of his minor chid, E.L.W.J., pursuant to The Convention of the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S., No. 11670 U.N.T.S. 49 ("Hague Convention") and the International Child Remedies Act, 42 U.S.C. § 11670 *et seq.* ("ICARA"). The court held an expedited hearing on the Petition on July 21, 2011. This order memorializes and clarifies rulings made at the hearing.

## PROCEDURAL BACKGROUND

Petitioner filed the Hague Petition, along with a Verified Petition for Warrant to Take Physical Custody of Child Pursuant to N.C. Gen. Stat. § 50A-311 [DE-2] ("Application") on July 15, 2011. Petitioner also filed an Ex Parte Motion to Seal [DE-3] the documents he filed in this action.

In the Hague Petition, Petitioner sought the return of his minor child, E.L.W.J. (or "Child") to the Republic of Ireland, on the ground that the Child was wrongfully removed from Ireland and wrongfully retained in the United States. In the Application, Petitioner asked the court to issue a warrant directing the United States Marshal Service to take E.L.W.J. into custody and bring the child before this court for a hearing, or if court is not in session, to deliver E.L.W.J. into the custody of Petitioner until the hearing is scheduled.

In an order filed on July 20, 2011, the court found, pursuant to 42 U.S.C. § 11604 and North Carolina General Statute § 50A-31, that E.L.W.J. was imminently likely[1] to be removed from the state by her mother, Respondent Rebecca Lynn Williams, if not taken into immediate custody pending the court's ultimate disposition of the Hague Petition. Accordingly, the court ordered that a warrant be issued directing the United States Marshal to take physical custody of E.L.W.J. and deliver her to this court for a hearing on the Hague Petition set for July 21, 2011, at 4 p.m. The court ordered that the Marshal could, if necessary, deliver E.L.W.J. into the custody of Petitioner pending the hearing. In another order filed on July 20, 2011, the court allowed Petitioner's Ex Parte Motion to Seal, and ordered that all documents in this action be sealed until the court receives notice that Respondent has been served by the United States Marshal in this action.

The matter came on for hearing before the undersigned on July 21, 2011, at 4 p.m. Petitioner

---

[1] In the July 20, 2011, Order [DE-7] the court found "that E.L.W.J. is likely to be removed from the state by Respondent if not taken into immediate custody pending the court's ultimate disposition of the Hague Petition." July 20, 2011, Order [DE-7] at p. 4. Implicit in the court's finding was that it was *imminently* likely that E.L.W.J. would be removed from the state. This court hereby AMENDS the July 20, 2011, Order to make explicit what was implicit in that order: "Based on the foregoing evidence, the court finds that E.L.W.J. is imminently likely to be removed from the state by Respondent if not taken into immediate custody pending the court's ultimate disposition of the Hague Petition."

2

was present with his attorney, Jennifer Lyday, and E.L.W.J. Respondent was present, without an attorney. The undersigned asked Respondent if she was prepared to go forward without an attorney, and Respondent answered yes. Both Petitioner and Respondent testified, and introduced evidence. Based on the testimony and evidence at the hearing and the Verified Hague Petition and Verified Application, the court makes the following:

## FINDINGS OF FACT

1. E.L.W.J. was born in the Republic of Ireland on May 4, 2007. *See* Amended Ex. 1 to Hague Petition [DE-5-1]. Petitioner is E.L.W.J.'s father, and Respondent is E.L.W.J.'s mother. Petitioner and Respondent have never married.

2. On January 26, 2010, Petitioner and Respondent executed a statutory guardianship declaration which granted Petitioner joint guardianship of E.L.W.J. under Irish Law pursuant to Section 4(2) of the Children Act of 1997. *See* Amended Ex. 4 to the Hague Petition [DE-5-2].

3. From E.L.W.J.'s birth until July 2009, Petitioner lived with the Child and raised the Child with Respondent. Both Petitioner and Respondent lived with the Child again from January 2010 until June 2010. From July 2009 to January 2010 and again from June 2010 until the events giving rise to the filing of the Hague Petition, Petitioner spent time with the Child every Wednesday and Saturday. The Child spent the night with Petitioner every other Saturday.

4. E.L.W.J. lived in Ireland from her birth until March 2011. She was enrolled in a Montessori classes for the school term of September 2010-June 2010.

4. In January 2011, Respondent told Petitioner that she would like to visit the United States to see her sister, and that she would like to take E.L.W.J. with her. Petitioner refused to sign a passport application for E.L.W.J.

3

5. Petitioner averred that Respondent nevertheless obtained a United States passport for E.L.W.J. without his knowledge or consent. On the passport application, Respondent stated she would be using the passport to travel to the United States for six weeks. The passport was issued on March 3, 2011.

6. On Wednesday, March 16, 2011, Petitioner spent time with E.L.W.J. during his regularly-scheduled access time. Respondent told him at the conclusion of the access time that she was planning on taking a trip over the upcoming weekend so Petitioner would not have his regularly-scheduled Saturday access time.

7. On March 19, 2011, Petitioner sent Respondent a text message asking to speak with E.L.W.J. Respondent replied that Petitioner would be able to speak with E.L.W.J. on Monday.

8. On March 22, 2011, Respondent emailed Petitioner telling him she was "gone for good." She told Petitioner it was in the best interest for her, E.L.W.J., and her older child to be away from Petitioner. She warned Petitioner not to come looking for her because he would never find her.

9. Petitioner reported Respondent's taking of E.L.W.J. to the local police. He filed an application with the Irish Central Authority, the office designated by Ireland to administer its responsibilities under the Hague Convention. The Irish Central Authority accepted Petitioner's application and forwarded it to the Central Authority of the United States, the United States Department of State. *See* Amended Ex. 6 to Hague Petition, [DE-5-4].

10. Petitioner thereafter filed for sole custody of E.L.W.J. He testified that the Irish District Court for the Dublin Metropolitan District served Respondent in the United States with notice of the hearing on the application. Respondent did not attend the hearing. The Irish District Court granted Petitioner sole interim custody of E.L.W.J. and scheduled another hearing on September 29, 2011.

*See* Amended Ex. 5 to the Hague Petition [DE-5-3].

11. Respondent testified she did not feel E.L.W.J. was safe in Petitioner's custody. She testified that in the past Petitioner allowed E.L.W.J. to insert an object in her nostrils, necessitating a visit to the emergency room, and blamed the incident on E.L.W.J.'s older half-sister. She also testified that Petitioner had, on one occasion, locked E.L.W.J. and her half-sister in a sitting room for hours. In June 2010, he took painkillers that did not belong to him and was impaired. She also testified that E.L.W.J.'s half-sister was a witness to Petitioner physically assaulting Respondent on one occasion, and that Petitioner broke Respondent's arm while on a vacation in Spain. Respondent also testified that Petitioner spoke to E.L.W.J.'s half-sister about topics which were inappropriate. She introduced into evidence email correspondence between herself and Petitioner, wherein each accuses the other of drug use and inappropriate behavior. Respondent testified that Petitioner had not, however, ever harmed E.L.W.J.

12. Respondent also testified that separating E.L.W.J. from her half-sister would result in psychological harm to both children.

## CONCLUSIONS OF LAW

1. "The Hague Convention seeks to protect children from the harmful effects of international parental abduction by setting out procedures to ensure that wrongfully removed children are turned to the country of their 'habitual residence.' " *Trudrung v. Trudrung*, 686 F.Supp.2d 570, 572 (M.D.N.C. 2010)(citing Hague Convention, pmbl., art. 1, 19 I.L.M. at 1501). "[T]he primary purpose of the Hague Convention is 'to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court.' " *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001)(quoting *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993)("*Friedrich I*")).

Congress enacted ICARA to implement the Hague Convention the United States. *See* 42 U.S.C. § 11601(b)(1).

2. To secure the return of an abducted child under the Hague Convention, a petitioner must prove by a preponderance of the evidence that "the child has been wrongfully removed or retained" within the meaning of the Hague Convention. 42 U.S.C. § 11603(e)(1)(A). To establish this prima facie case of wrongful removal or retention, a petitioner must show that (1) the child was "habitually resident" in the petitioner's country of residence at the time of the removal or retention; (2) the removal or retention was in breach of the petitioner's custody rights under the law of his home state, and (3) the petitioner has been exercising those rights at the time of the removal or retention." *Bader v. Kramer*, 484 F.3d 666, 668 (4th Cir. 2007).

3. "Habitual residence" is not defined by the Hague Convention. *Miller*, 240 F.3d at 400. The Fourth Circuit has concluded, however, that "there is no real distinction between ordinary residence and habitual residence." *Id.* (internal quotation and citation omitted). A court must make a fact-specific inquiry on a case-by-case basis to determine a child's customary residence prior to the removal or retention. *Id.* In undertaking this inquiry, the court uses a two-part framework. *Maxwell v. Maxwell*, 588 F.3d 245, 251 (4th Cir. 2009). The court first examines whether the parents shared a settled intention to abandon the former country of residence. *Id.* The court then examines the extent of the child's acclimatization to the new country of residence. *Id.*

4. Under the framework set forth in *Maxwell*, E.L.W.J.'s habitual residence is the Republic of Ireland. First, there was no shared parental intent to abandon the Republic of Ireland as E.L.W.J.'s habitual residence. Second, there is no indication that the short four months E.L.W.J. has spent in the United States rendered her so acclimatized to her life in this country that the court "can

6

say with confidence that [E.L.W.J.'s] relative attachments to the two countries have changed to the point where requiring return to the original forum would now be tantamount to taking the child out of the family life and social environment in which [her] life has developed." *Mozes v. Mozes*, 239 F.3d 1067, 1081 (9th Cir. 2001)(internal quotation and citation omitted). *See also Maxwell*, 588 F.3d at 253-54.

5. Petitioner had "custody rights" as to E.L.W.J. as they are defined under the Hague Convention and Irish law. The Hague Convention defines "rights of custody" as including "rights relating to the care of the person of the child, and in particular, the right to determine the child's residence." Convention, art. 5. The Eleventh Circuit, in examining Irish law, has observed that "guardianship" under Irish law " 'concerns matters of overriding seminal importance to a child's upbringing' " and " 'the duty to ensure that a child is properly cared for and that decisions relating to the child are made with his or her best interests at heart.' " *Hanley v. Roy*, 485 F.3d 641, 646 (11th Cir. 2007)(quoting Geoffrey Shannon, Child Law, § 2-40, p. 46 (2005)). Accordingly, the Eleventh Circuit concluded that guardianship rights under Irish law "necessarily involve 'the care of the person of the child' within the meaning of the [Hague] Convention." *Id.* at 648 (citing *R.C. v. I.S.*, [2004] 2 I.L.R.M. 285, 294 (High Court, Ir.) (stating that a "guardian" may not have "custody of the child under Irish law" but is still "a person who has 'rights of custody' ... within the meaning of art. 5 of the [C]onvention"); Response of Ireland to the 2006 Questionnaire concerning the practical operation of the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, 1 (2006), available at *http:// www. hcch. net/ upload/ abd_ 2006_ ie. pdf* (equating guardianship rights under Irish law with "rights of custody," and commenting that some countries "which have no equivalent in Irish law" "have difficulties with the understanding of the notion" that

7

persons afforded guardian status under Irish law "have guardianship rights and thus custody within the meaning of Article 3 of the Hague Convention.")). This court similarly concludes that joint guardianship under Irish law is a right of custody within the meaning of the Hague Convention. Additionally, it is undisputable that Petitioner had "custody rights" as to E.L.W.J. after June 29, 2011, when the Irish District Court awarded him interim sole custody of the child.

6. Respondent's removal of E.L.W.J. from Ireland was in breach of Petitioner's custody rights. Petitioner's custody rights–by virtue of his joint guardianship of E.L.W.J.–included the right to make decisions of overriding seminal importance to E.L.W.J.'s upbringing. The nation where E.L.W.J. is reared is a matter of overriding seminal importance to E.L.W.J.'s upbringing, and Petitioner has the right to take part in that decision. Moreover, Respondent's retention of E.L.W.J. in the United States after the Irish District Court awarded Petitioner interim sole custody of the child was in breach of Petitioner's custody rights.

7. Petitioner was exercising his custody rights at the time of the E.L.W.J.'s removal from Ireland and retention in the United States. Courts "will 'liberally find "exercise" whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child.'" *Bader v. Kramer*, 484 F.3d 666, 671 (4th Cir. 2007)(quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996) ("*Friedrich II*"). The Fourth Circuit has explained that under this approach: " 'a person [who] has valid custody rights to a child under the law of the country of the child's habitual residence . . . cannot fail to 'exercise those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." *Id.* (quoting *Friedrich II*, 78 F.3d at 1066). Here, Petitioner has been active part in E.L.W.J.'s life from her birth until she was removed from Ireland.

8. The court therefore finds that Petitioner has established, by preponderance of the evidence, a prima facie case under the Hague Convention.

9. Upon a showing of wrongful removal or retention, the return of the child is required unless a respondent establishes one of the defenses available under the Hague Convention. Two of the defenses must be proved by clear and convincing evidence: (1) that return would expose the child to a "grave risk" of "physical or psychological harm or otherwise place them in an intolerable situation" and (2) that return would not permitted by the "fundamental principles of the United States relating to the protection of human rights and fundamental freedoms." *Miller*, 240 F.3d at 398 (internal quotation and citations omitted). Three other defenses must be proved by only preponderance of the evidence: (1) that the petition for return was not commenced within one year of the wrongful retention or removal and the child is now well-settled in another country; (2) that the petitioner was not actually exercising custody rights at the time of retention or had consented to or subsequently acquiesced in the removal or retention, or (3) that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of her views. *Id.*; *Hasbun Escaf v. Rodriquez*, 200 F. Supp.2d 603, 613 (E.D.Va. 2002). The defenses are to be narrowly construed, *see Karkkainen v. Kovalchuk*, 445 F.3d 280, 288 (3d Cir. 2006), and even where a defense has been established, the court retains the discretion to order the child's return. *Miller*, 240 F.3d at 402.

10. The only affirmative defense remotely implicated by the evidence before the court is the defense available under Article 13b of the Hague Convention, which requires Respondent to show, by clear and convincing evidence, that there is a grave risk that returning E.L.W.J. to Ireland would expose the child to physical or psychological harm or otherwise place her in an intolerable situation.

In assessing whether this defense has been established, the court is cognizant that risk of physical or psychological harm must be "grave" which is "a great deal more than minimal" and "more than serious." *McManus v. McManus*, 354 F.Supp.2d 62, 68 (D.Mass. 2005)(quoting *Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir.2000)). Moreover, the court is aware that the United States Department of State has opined that the "grave risk" defense "was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests." *Danaipour v. McLarey*, 286 F.3d 1, 14 (1st. Cir. 2002)(quoting Hague International Child Abduction Convention, Text and Legal Analysis, 51 Fed.Reg. 10,494, 10,510(Dep't of State Mar. 26, 1986)). Respondent has not met her burden in establishing the affirmative defense in this case. Although the court does not, in any way, condone the alleged domestic abuse toward Respondent or Petitioner being under the influence of controlled substances–legal or otherwise–the fact remains that Petitioner has never harmed E.L.W.J. nor is there any suggestion that he will harm her. Nor is there evidence of a sustained pattern of physical abuse and/or propensity for violent abuse. *Id.* at 70 ("Evidence of real but sporadic or isolated incidents aimed at persons other than the child at issue, have not been found sufficient to support application of the 'grave risk' exception."). Moreover, there is no evidence that E.L.W.J.'s separation from her half-sister will result in the type of severe psychological harm envisioned by the affirmative defense. *See Freier v. Freier*, 969 F.Supp. 436, 443 (E.D. Mich. 1996)(finding that a child's separation from her mother and two half-siblings did not establish the "grave risk" defense because "this sort of adjustment problem common in the relocation of most children is not enough"). Finally, Respondent has not shown, by clear and convincing evidence, that returning E.L.J.W. to Ireland will subject her to an intolerable situation.

11. Petitioner has established, by preponderance of the evidence, a prima facie case under

the Hague Convention. The court further finds that Respondent has failed to establish any of the available defenses under the Hague Convention. Accordingly, the court finds that the return of E.L.W.J. to the Republic of Ireland for an adjudication of child custody is appropriate. It is therefore required by Article 12 of the Convention that E.L.W.J. be returned forthwith to the Republic of Ireland with her father, Brian Anthony Judge. In so doing, the court reiterates that its focus of inquiry in this proceeding has not been to determine which parent–Petitioner or Respondent–is better suited to serve as E.L.W.J.'s custodian. *Cantor v. Cohen*, 442 F.3d 196, 207 (4th Cir. 2006). Rather, the court's inquiry has focused solely on the parties' specific claims and defense under the Convention. The courts of the Republic of Ireland are left with the task of determining what, ultimately, is in the best interests of E.L.W.J.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that Petitioner Brian Anthony Judge's Verified Petition Under Hague Convention Seeking Return of Child to Petitioner, Immediate Issuance of Show Cause Order to Respondent, and Expedited Hearing on the Merit [DE-1] is ALLOWED. The minor child, E.L.W.J., shall be returned forthwith to the Republic of Ireland in Petitioner Brian Anthony Judge's custody.

It is FURTHER ORDERED that Respondent Rebecca Lynn Williams immediately provide Petitioner Brian Anthony Judge with any and all passports or travel documents belonging to E.L.W.J.

It is FURTHER ORDERED that Petitioner is permitted fourteen days to file an application for attorneys' fees and expenses, and Respondent shall have fourteen days to respond.

It is FURTHER ORDERED that the court's July 20, 2011, Order [DE-7] is AMENDED to

reflect that the court found that it was imminently likely that E.L.W.J. would be removed from the state by Respondent if taken into immediate custody pending the court's disposition of the Hague Petition.

Finally, the court ORDERS that seal in this case is lifted. Only the exhibits filed at DE-1-1, DE-1-3, DE-1-4, DE-1-5, and DE-1-6 remain under SEAL, in accordance with the court's July 20, 2011, Order [DE-6]. All other documents are UNSEALED.

SO ORDERED. This, the 25th day of July, 2011.

*James C. Fox*
James C. Fox
Senior United States District Judge